[Cite as *State v. Oliver*, 2013-Ohio-1977.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 26446 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DESHAWN L. OLIVER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 01 0280 (C) |

DECISION AND JOURNAL ENTRY

Dated: May 15, 2013

MOORE, Presiding Judge.

{¶1} Defendant-Appellant, Deshawn Oliver, appeals from the April 16, 2012 judgment entry of the Summit County Court of Common Pleas. This Court reverses.

I.

{¶2} Mr. Oliver was indicted for one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), one count of carrying concealed weapons, in violation of R.C. 2923.12(A)(2), one count of receiving stolen property, in violation of R.C. 2913.51(A), and one count of trafficking in marijuana, in violation of R.C. 2925.03(A)(C)(3), with a firearm specification as to aggravated burglary and a criminal forfeiture specification as to trafficking in marijuana.

{¶3} Mr. Oliver pleaded not guilty to all counts in the indictment.

**{¶4}** After plea negotiations, he pleaded guilty to trafficking in marijuana with a criminal forfeiture specification, and the State dismissed all of the remaining charges. Additionally, Mr. Oliver pleaded guilty to a community control violation from a previous case.

**{¶5}** Upon accepting Mr. Oliver's guilty plea, the trial court immediately sentenced him to six months imprisonment, to be served concurrently with an eighteen month sentence for the community control violation. The trial court also suspended Mr. Oliver's driver's license for six months.

**{¶6}** After the court imposed its sentence, Mr. Oliver, through counsel, informed the trial court that he wished to withdraw his guilty plea. At the hearing, Mr. Oliver's attorney questioned him as follows:

\* \* \*

Q. [Mr. Oliver], I met with you at the jail a couple times over the last five or six days; is that correct?

A. You came one time.

Q. Okay. But I did meet with you earlier this week and I met with you late last week, correct?

A. You never came earlier this week.

A. Okay.

\* \* \*

Q. You indicated to me that you wanted to withdraw your guilty pleas both to the probation violation as well as the charges which arose in Case Number 2012-01-0280 (C); is that correct?

A. I told you I didn't want to plead—I didn't want to plead out to trafficking as a felony five. And I've been telling you this for the longest.

\* \* \*

Q. And you did enter a guilty plea to the trafficking in marijuana charge; is that correct?

A. Because you told me –

* * *

Q. Do you—you said you didn't want to plead to the trafficking?

A. Yeah.

* * *

The trial court then questioned Mr. Oliver as follows:

Q. Let's take the last case that you entered a guilty plea in front of Judge Corrigall Jones.

A. Uh-huh.

Q. Do you want to withdraw that plea of guilty?

A. Yes.

Q. What is your reason for making that request?

A. Because he was telling me, like, if I have—

Q. You say he, meaning your attorney * * * ?

A. Yeah[.]

He was telling me to just plead out to it and stuff like that, just because—he said it was trafficking but it's really not. It's not trafficking.

I wasn't selling no weed. I wasn't doing nothing like that. I didn't have enough weed for it to be trafficking.

I didn't even have enough money, like how he was—how they was—how he was saying it was trafficking. He said just because I had the money it was trafficking.

And I don't think—I don't think that's right. I don't think that's true, like.

Q. So do you think your version of the law is better than the version that your attorney gave you?

You think you know more about the law than your attorney and the law degree?

A. No, no. I ain't saying that. * * *

No. He just was telling me just to cop out.

I didn't even know I was going to get six months for the weed. I thought I was just pleading out to a PV.* * *

I know I shouldn't have been charged with trafficking in marijuana, though. I know that.

* * *

Mr. Oliver then alleged that his attorney would not give him a chance to speak or ask questions, and that his attorney accused him of "acting like a kid" and asked him if he wanted a "lollipop."

{¶7} The trial court then asked Mr. Oliver's attorney to take the stand, swore him in, and commenced with questioning as follows:

* * *

Q. You have represented [Mr. Oliver] in this latest case.

He today has made some allegations that you forced him into entering a plea of guilty in this case.

Can you tell the Court what you recollect in reference with your conversations with [Mr. Oliver]?

A. Judge, I met with him many times.

In fact, we spent a lot of time in the jury room here in this particular court discussing the nature of his case.

He was charged with aggravated burglary as an F-1. There was also a firearm specification to that.

He was charged with [] tampering with evidence as an F-3.

He was charged with carrying a concealed weapon as an F-4.

He was charged with receiving stolen property as an F-4.

He was also charged with the trafficking in marijuana as an F-5, and there was a specification that went along with that because he had a hundred forty dollars on him at the time.

I encouraged him to resolve this case.

We did discuss the fact that he would be pleading to the trafficking in marijuana charge.

He did indicate that he understood that that was the felony of the fifth degree.

At some point after I—after the plea and I met with him at the jail, he expressed that he had felt it should have been a misdemeanor.

I told him that that was perhaps his interpretation, but he seemed at all times to be knowledgeable about understanding the nature of his plea.

I believe that Judge Corrigall Jones went over things very thoroughly with him, and he did express his understanding of what he was doing.

I do not believe that I coerced him. I will say in view of the seriousness of the charges against him and witnesses who were prepared to testify, I felt it was in his best interests to resolve this case and he seemed to assent to that.

\* \* \*

**{¶8}** After allowing the prosecutor to make a brief statement, the trial court denied Mr. Oliver's motion to withdraw his guilty plea.

**{¶9}** Mr. Oliver appealed, raising one assignment of error for our consideration.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AND DENIED [] [MR.] OLIVER HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS WHEN IT SOLICITED AND ALLOWED TESTIMONY FROM HIS DEFENSE COUNSEL THAT WAS ADVERSE TO [MR.] OLIVER'S INTERESTS, AND THUS DENIED HIM THE ASSISTANCE OF COUNSEL AS AN ADVOCATE ON HIS BEHALF AT THE HEARING ON THE WITHDRAWAL OF HIS PLEA.

**{¶10}** In his sole assignment of error, Mr. Oliver argues that he was denied his constitutional right to counsel at the hearing to withdraw his guilty plea when his counsel took the stand and testified against him, without the opportunity for cross-examination. Specifically, Mr. Oliver argues that, through defense counsel's testimony, he rebutted Mr. Oliver's contentions that: (1) Mr. Oliver was confused about what was going on at the plea hearing, (2) defense counsel refused to explain things before the plea hearing, and, (3) defense counsel resorted to ridicule and name-calling in order to coerce Mr. Oliver into accepting the plea.

**{¶11}** In response, the State contends that Mr. Oliver was not entitled to counsel at the post-sentence hearing because it is not a "critical stage" in the proceedings, and, even if Mr. Oliver was entitled to counsel, he has failed to show that his attorney's representation was ineffective.

**{¶12}** The Sixth Amendment to the United States Constitution, and Section 10, Article 1 of the Ohio Constitution, confer upon criminal defendants certain rights, including the right to have the assistance of counsel for their defense.

**{¶13}** In the present matter, both parties raised the issue of whether a post-sentence hearing on a motion to withdraw a guilty plea constitutes a "critical stage" in the proceedings for purposes of a criminal defendants' right to counsel. However, as indicated in the record, Mr. Oliver was *already* represented by his attorney at this stage in the proceedings, and, as such, we need not address whether counsel needed to be *appointed* to represent him at a post-sentence hearing, or whether such a hearing is considered a critical stage in the litigation. The question before us, then, is whether the trial court completely denied Mr. Oliver his right to the effective assistance of counsel when it caused his attorney to testify against him, without first allowing Mr. Oliver time to obtain new counsel for purposes of representation and cross-examination.

**{¶14}** In order to prove ineffective assistance of counsel, Mr. Oliver would generally be required to satisfy a two-prong test. First, he would have to prove that trial counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, he would have to prove that trial counsel's deficient performance caused him prejudice. *State v. Srock*, 9th Dist. No. 22812, 2006-Ohio-251, ¶ 21. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

**{¶15}** "There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *U.S. v. Cronic*, 466 U.S. 648, 658 (1984). "Most obvious, of course, is the complete denial of counsel." *Id*. at 659.

**{¶16}** In *Cronic*, the High Court reviewed a claim of ineffective assistance of counsel where a relatively young attorney was appointed to represent a criminal defendant in a complex federal prosecution with less than 30 days in which to prepare for trial. *Id*. at 649. Admittedly, the case before us does not involve review of counsel's performance at trial, but rather in a post-judgment hearing. Nevertheless, the analysis engaged in by the Court is instructive.

**{¶17}** Here, Mr. Oliver arrived at the post-sentence hearing to withdraw his guilty plea. He believed that he was represented by his previously-appointed defense attorney. Defense counsel was present at the hearing. During the course of the hearing, Mr. Oliver testified before the judge that he did not realize he was pleading guilty to trafficking in marijuana, that his attorney would not answer his questions or allow him to speak, that his attorney ridiculed him, called him names, and coerced him into taking the plea.

**{¶18}** The trial court then asked defense counsel to take the witness stand and swore him in for purposes of the record. During his testimony, Mr. Oliver's defense attorney refuted the assertions that Mr. Oliver had just made in order to have his plea withdrawn. Counsel stated that he and Mr. Oliver had discussed that Mr. Oliver would be pleading guilty to trafficking in marijuana, a fifth-degree felony, he did not believe that he coerced Mr. Oliver into taking the plea, and Mr. Oliver "seemed at all times to be knowledgeable about understanding the nature of his plea." At this point, there was a clear "breakdown of the adversarial process" because Mr. Oliver's attorney testified directly and indisputably *against* the interests of his client, and Mr. Oliver did not have the opportunity for cross-examination. *See Cronic*, 466 U.S. at 657.

{¶19} As indicated by the United States Supreme Court in *Cronic*, "[a]n accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases 'are necessities, not luxuries.' Their presence is essential because they are the means through which the other rights of the * * * [accused] are secured." *Id*. at 653, quoting *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). "The substance of the Constitution's guarantee of the effective assistance of counsel is illuminated by reference to its underlying purpose. '[T]ruth,' * * * 'is best discovered by powerful statements on both sides of the question.'" *Id*. at 655, quoting Kaufman, *Does the Judge Have a Right to Qualified Counsel*?, 61 A.B.A.J. 569 (1975). In directing defense counsel to testify against his client's interests, without the opportunity for cross-examination, the trial court completely denied Mr. Oliver the assistance of his counsel. *But see State v. Crissman*, 31 Ohio App.2d 170, 179 (7th Dist.1971), (The Seventh District Court of Appeals concluded that the defendant's rights to effective assistance of counsel were not violated because "the prosecuting attorney limited his questioning of defendant's counsel to matters within counsel's knowledge, *independent of any communication with [the] defendant*[.]"). (Emphasis added.)

{¶20} Therefore, we conclude that the trial court erred in denying Mr. Oliver the assistance of his counsel. We reverse and remand in order for Mr. Oliver to be appointed new counsel, and for a re-hearing on Mr. Oliver's motion to withdraw his guilty plea.

{¶21} Accordingly, Mr. Oliver's assignment of error is sustained.

III.

{¶22} In sustaining Mr. Oliver's sole assignment of error, the judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CARR, J.
CONCUR.

APPEARANCES:

NICHOLAS SWYRYDENKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.